**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 25-467** |
| **v.** | : | |
| **XIN GUANG GUO** | : | |

**<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Amanda McCool, Assistant United States Attorney for the District, hereby files this sentencing memorandum. The defendant, Xin Guang Guo, is scheduled to be sentenced on August 24, 2026.

The defendant stands before this Court for sentencing having been convicted of two counts of use of interstate commerce facilities in the commission of murder-for-hire. As charged in the indictment, the defendant was convicted of hiring a hitman to murder his former business partner and his business partner's paramour. The defendant's conduct was consistent and deliberate, and his motivation was clear. Thankfully, the hired "hitman" contacted law enforcement instead of carrying out the defendant's depraved demand. Only through the intervention of law enforcement, the murders of two innocent people were evaded. The

defendant proved he is a real danger to his intended victims and the community at large.

The sentence imposed upon the defendant must account for the protection of the public from future crimes committed by the defendant, just punishment to satisfy those whom he aggrieved, and deterrence for the defendant and others who consider engaging in similar crimes. All of these reasons are accounted for under U.S.S.G. § 3553(a). As such, the government is respectfully requesting a sentence at the low end of the guidelines, which are 188 to 235 months of imprisonment. To sentence the defendant below the guidelines is unwarranted based on the facts of this case. There is simply no sound basis upon which to vary downward.

Pursuant to the Court's standing order, dated February 5, 2026, the government simultaneously submits a sealed supplemental memorandum.

## I. THE INDICTMENT AND COUNTS OF CONVICTION

The Presentence Investigation Report ("PSR") accurately details the offenses of conviction with respect the charged conduct and stipulated relevant conduct.

The defendant was pled guilty  two counts of use of interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. § 1958 (Counts One and Two). At the time he entered the plea, he acknowledged the facts and stated under oath that he was guilty.

## II. MAXIMUM PENALTIES AND SENTENCING GUIDELINES CALCULATION

### A. <u>Statutory Maximum Sentence and Mandatory Sentence</u>

Counts One and Two of the Indictment carry a statutory maximum of 10 years' imprisonment. PSR ¶ 96. The Court may impose a term of up to 3 years of supervised release to follow the defendant upon his release from custody. PSR ¶ 101. The Court may impose a fine up to $500,000. PSR ¶ 105. A special assessment of $200 is required. PSR ¶ 106.

**B. <u>Sentencing Guidelines Calculation</u>**

The PSR accurately accounts for the conviction based in the indictment.

Count 1 and Count 2 are not grouped because they involve separate harms and victims. PSR ¶ 31. For Count 1, the base offense level is 33. PSR ¶ 32. Four levels are added because the offense involved the offer of anything of pecuniary value for undertaking the murder. PSR ¶ 33. The adjusted offense level is 37. PSR ¶ 27. For Count 2, the base offense level is 33. PSR ¶ 38. Four levels are added because the offense involved the offer of anything of pecuniary value PSR ¶ 39. Therefore, the adjusted offense level for Count Two is 37. PSR ¶ 43.

One unit is assigned to the group with the highest level, and one unit is assigned to any group that is equally serious or from 1 to 4 levels less serious than the highest offense level. As such, the total number of units for this conduct is 2, PSR ¶ 44, and the highest adjusted offense level is increased by 2 levels, PSR ¶ 46. The defendant benefits from a 3-level reduction because he timely accepted responsibility. PSR ¶¶ 49-50. The total offense level is 36. PSR ¶ 51.

The defendant has a criminal history score of zero, resulting in a criminal history category of I. PSR ¶¶ 54-55.

Based upon a total offense level of 36 and a criminal history category of I, the guideline imprisonment range is 188 to 235 months. PSR ¶ 97.

## III. CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all the sentencing factors set forth in 18 U.S.C. § 3553(a), in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. <u>The nature and circumstances of the offense and the history and characteristics of the defendant.</u>**

Xin Guang Guo is 48 years old. He was born in Fuzhou, China and is a Legal Permanent Resident of the United States. Following his sentence of incarceration, the defendant will face removal proceedings to China. The defendant moved to the United States in 1995. The defendant reports having his basic needs met and denied any trauma in his childhood. The defendant is estranged from his wife and two children. The defendant has no criminal convictions.

Despite a solid upbringing and no criminal history, in September and October of 2025, the defendant attempted to commit the most serious crime. By all accounts, the defendant believed his intended victims owed him money or took money from the business' slot machines. PSR ¶ 21. Once the defendant felt aggrieved, he developed a specific plan to have those people killed.

On September 30, 2025, the defendant attempted to contact someone he knew would kill his victims for money. The following day, the defendant followed up with an individual who, unbeknownst to the defendant, was a confidential source ("CS") of information to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). The defendant reiterated his intention to the CS and told the CS he would provide $30,000 if he killed them. The defendant sent photographs of his victims along with their addresses and vehicles. He was direct and determined.

On October 2, 2025, the CS and defendant discussed the plan over the phone in a controlled call setting under the supervision of law enforcement. The defendant specified that he wanted his former business partner killed first and then his business partner's paramour. A few days later, the defendant reached out to the CS to inquire about the status of the plan. The defendant clearly stated his intention: "The man can't let him escape." The defendant also detailed where in the victims' home the CS could find other assets. The defendant estimated that the victims had $100,000 in cash in a safe. The defendant told the CS he could keep the money from the safe and that all he wanted was his victims "out."

On October 5, 2025, the defendant again followed up with the CS. On October 6, 2025, the defendant provided $5,000 in cash to the CS as a deposit to complete the murders. The defendant asked for a photograph proving the victims were deceased, and after receiving the "proof", the defendant would pay the balance.

Thankfully, because of the intervention of law enforcement, the defendant's victims were not physically harmed. That is not a basis to vary downward. The defendant's actions over the course of one week demonstrate that he was determined to have these two people killed. Even when he was interviewed for his PSR, the defendant reiterated his motivation for wanting them killed. (*See* PSR ¶ 21). The Court must consider the serious nature and circumstances of his conduct and the impact on his victims.

**B. <u>The need for the sentence imposed to reflect the seriousness of the offense, to</u>**

**promote respect for the law, and to provide just punishment for the offense.**

The defendant's crimes invariably harmed his victims. The defendant attempted to use his financial resources to end two human lives. Although his victims were not *physically* harmed, they now live in fear believing that the defendant will have them killed. This crime is very serious, and the punishment must be appropriately significant. A sentence at the low end of the guideline range accounts for the public's basic expectations and serves to promote respect for the law and how it is enforced. A lenient sentence sends a message to the public, including those who consider committing similar offenses, that solicitation to commit murder is not punished in accordance with its severity.

**C. The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. A guideline sentence will adequately deter this defendant and protect the public by incapacitating him.

General deterrence will also be served when the sentence imposed on the convictions is made public. The punishment imposed should adequately reflect the seriousness of this repeated conduct. To sentence the defendant to a below-guideline sentence risks sending the message to this defendant, as well as others, that you can commit or attempt to commit the most serious crime and not face commensurate consequences for that behavior.

**D. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

A guideline sentence will afford the defendant ample opportunity to pursue training, education, care or treatment, should he desire to, through the various opportunities provided to inmates within the Bureau of Prisons and supervised release. The defendant reports that he does not need any mental health, drug and alcohol treatment.

**E. The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The guidelines reflect the seriousness of the crimes of conviction. The guideline range provides the Court with insight into what an appropriate sentence looks like when faced with multiple crimes that targeted multiple innocent victims, causing separate harm.

A sentence at the low end of the guideline range properly reflects the accumulated wisdom and expertise of the Sentencing Commission, and serves the vital goal of uniformity and fairness in sentencing. While, to be sure, "[i]n accord with 18 U.S.C. § 3553(a), the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence," *Kimbrough v. United States*, 552 U.S. 85, 90 (2007), it remains the case that "the Commission fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise,'" *id.* at 108-09 (citation omitted). Thus, the Supreme Court stated:

"We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough*, 552 U.S. at 109 (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)[1]).

---

[1] In *Rita*, the Supreme Court held that an appellate court may presume that a within-guideline sentence is reasonable. While this presumption does not apply before the district court, *Rita*, 551 U.S. at 351, the Supreme Court's observation is informative that "the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Id.* at 347 (emphasis in original).

Further, the advisory guidelines are the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the Guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of *Booker* that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Booker*, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the *Booker* Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. *Id.* at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" *Cooper*, 437 F.3d at 331 (quoting *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)).

For all these reasons, the advisory guideline range deserves significant respect. To be clear, the government recognizes that the guidelines are advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, *see* § 3553(a)(4), and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained in detail earlier, the 3553(a) factors on balance support the imposition of the recommended guideline punishment.

## IV. SUPERVISED RELEASE

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18

U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least three years is warranted. Although as the immigration law stands now, it is likely that the defendant will be removed from the United States following his prison sentence, we cannot predict the state of immigration law that far into the future. In an abundance of caution, the government is seeking a term of three years of supervised release. As explained above, the defendant presents a real threat to his victims and the community at large. Close supervision following release from imprisonment is warranted to aid his reentry to society and to protect the public. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2.

## V. CONCLUSION

The defendant engaged in calculated criminal conduct that has a real and tangible negative impact on the victims and the surrounding community of law-abiding citizens. His own actions have provided this Court with all the reasons necessary to impose a significant sentence that is at the low end of the applicable guideline range.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Amanda McCool*
AMANDA McCOOL
Assistant United States Attorneys

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by ECF upon:

Todd Henry, Esq.
The Henry Law Firm
1500 Walnut Street, Apt. 1060
Philadelphia, PA 19102
dlombardo@thehenryfirm.biz

*/s/ Amanda McCool*
AMANDA McCOOL
Assistant United States Attorneys

Date: August 17, 2026